No. 5003.

SUCCESSION OF MILTON TAYLOR. ON PETITION OF THOMAS J. THROOP,. ADMINISTRATOR, AND OF MASON COUNTY COURT, OF MASON COUNTY, KENTUCKY, AND ON OPPOSITION TO ACCOUNTS OF EXECUTOR, P. B. FOUKE,. PUBLIC ADMINISTRATOR, (CONSOLIDATED).

In the matter of this succession, the judgment putting the heirs in possession was not the result of fraud. It was done openly and contradictorily with the proper parties.

The heirs having been put in possession, the Second District Court was without jurisdiction over the matter in controversy in this proceeding.

Under the foregoing conclusions the plaintiffs have no interest to contest the account filed by the administrator.

APPEAL from the Second District Court, parish of Orleans.　*Tissot, J. B. R. Forman,* for Throop and Macon County Court, plaintiffs and opponents, appellants.　*W. W. Handlin* and *D. C. Labatt,* for defendants and opponents, appellees.　*Hays & New* and *Ernest Morel,* for P. B. Fouke, executor, public administrator, appellee.

WYLY, J. Milton Taylor died leaving a succession in Mason county, Kentucky, the place of his domicile, a succession in Hamilton county, Ohio, and a succession in this State. On the thirteenth of March, 1870, John I. Rickey, the dative executor from Hamilton county, Ohio, caused the will of the deceased to be probated in the Third District Court, and applied to be appointed dative executor thereof in this State. An opposition was filed to his appointment by P. B. Fouke, public administrator, who claimed the office himself. The court appointed him, and, on appeal, the action of the court below was affirmed. See the case reported in 23 An. 22.

On the twenty-fifth of July, 1871, Mary Jane Taylor, wife of Milton Rodgers, was recognized as sole heir of Milton Taylor, deceased, and was ordered to be put in possession of all the property and effects of the succession, " on the said Mary Jane Taylor Rodgers giving bond with good and solvent security in the amount delivered to her by said public administrator, conditioned as the law provides in such cases, reserving to any heir at law his right to set up any claim he may have against said succession."

In the application of Mrs. Rodgers, and in this order, the will of Milton Taylor, which the court had ordered executed, was entirely ignored— no reference whatever was made to it.

On the third of August, 1871, Phœbe Ann Duncanson and John James. Taylor, claiming also to be the children of Milton Taylor, prayed to be recognized as heirs and put in possession of two-thirds of the property of said succession. Their application was opposed by Mary Jane Rodgers. The controversy was finally settled in favor of said applicants,. this court holding that " the evidence which establishes the status of the

appellee as the child of the deceased, shows with equal clearness that the petitioners herein are also his children." See the case reported in 24 An. 326, decided in May, 1872.

On the twelfth of March, 1872, Thomas J. Throop, "as administrator with the will annexed," representing the estate of the deceased, by appointment of the probate court of Mason county, Kentucky, and as attorney in fact for Mason County Court, one of the legatees under the will, brought this suit against the public administrator, appointed dative executor of the will, and against Mary Jane Rodgers, Phœbe Ann Duncanson, and John James Taylor, claiming to be heirs at law of the deceased, and he prays that the decree of the thirteenth of March, 1870, ordering the execution of Milton Taylor's will, be carried into effect; that the judgment recognizing said pretended heirs at law, and ordering them to be put in possession of the succession, be set aside and annulled; that the public administrator be dismissed from the office of dative executor for failing to file annual accounts, and for failing to deposit the funds of the succession in bank according to law; that he be condemned to pay ten per cent interest and twenty per cent damages on the amount of the funds not so deposited; that petitioner be recognized and put in possession of the succession; and if from any cause this relief be refused, that petitioner have judgment against the succession for the amount of the legacy to the Mason County Court, represented herein by petitioner.

The court below dismissed the suit on the peremptory exceptions filed by the defendants, and, on appeal, its judgment was reversed and the case remanded for trial. See the decision reported in 25 An. 446. The grounds for the action, as stated in the petition, are: The petitioner is administrator "with the will annexed" of the succession at the domicile of the deceased in Kentucky, and that the succession in this State is ancillary to that, and by the laws of Kentucky his power as administrator is the same as that of executor with seizin; that the judgments he seeks to annul were obtained by fraud and false testimony; that these pretended heirs were adulterous bastards of the deceased, and that their mother was a slave, and by the laws of Kentucky and Louisiana they are incapable of inheriting from the deceased; that the property in Kentucky is insufficient to pay the special legacies in the will, especially the legacy due the Mason County Court (which is capable of inheriting by the laws of Kentucky); that the public administrator has failed to account annually, according to law, and he has failed to deposit the funds of the succession in bank.

After the case was remanded, Mary Jane Rodgers, Phœbe Ann Duncanson, and John James Taylor answered, and after denying generally and specially the allegations of plaintiff, they "admit that they are three-fourths white and one-fourth colored, as acknowledged in 1869 by their

father, Milton Taylor, in the memorandum to his will; they admit they are the natural children, duly acknowledged, of Milton Taylor, and that their mother was originally purchased by their father, but was treated kindly by him as the mother of his children born in his house; they admit that they were born in Kentucky, but were educated by their father and brought up in Ohio, where, they resided the greater part of their lives and where they now reside, and where their father, Milton Taylor, made his will and died, having resided there much of his time before his death. Respondents deny that their father had any other heirs, and they allege that in his will of 1869 he provided liberally for them and their children, but that those dispositions are void in Louisiana, and in said will of 1869 and the memorandum thereto their said father duly acknowledged respondents as his natural children, besides having all their lives previously to 1869 acknowledged them in his letters, acts, and all kinds of private writings. Respondents aver that the property of their father, Milton Taylor, in Louisiana, is real property, and that the clause, in so far as it disposes of real property in favor of persons whom plaintiff claims to represent, is null and void, for this, to wit:

First—That the bequest in trust to the Mason County Court is contrary to the law of Louisiana prohibiting substitutions and *fidei commissa*.

Second—That the judges of the county court have no interest proper in the bequest, and the *cestui que trust*, or the real beneficiaries, are not designated or described with sufficient certainty.

Third—The language of the bequest is imperative, that the commissioners shall be appointed and the objects of the charity designated (which is even not alleged to have been done), and therefore the trust is prohibited.

Fourth—Not being residuary legatees, the justices of the county court can not take the legacy if it be impossible to execute the trust upon real property in Louisiana.

Wherefore respondents pray that the order, which was *ex parte* as to them, ordering the execution of the will of Milton Taylor, so far as it relates to real property, or its proceeds, in Louisiana, be annulled; that respondents be recognized as natural children of Milton Taylor, duly acknowledged, and put in possession as heirs as against the plaintiff, according to the decrees heretofore rendered in the premises; that plaintiff's demand be rejected with costs, etc.

After the case had been regularly submitted on the issues stated and on the several oppositions to the two accounts filed by the public administrator, which will be more fully noted hereafter, the court dismissed, for want of jurisdiction, the demand of Thomas J. Throop, "administrator with the will annexed," etc., on the ground that the orders for putting

the heirs into possession, sought to be annulled, divested the court of jurisdiction; it also amended the accounts and homologated them.

From this judgment Thomas J. Throop, administrator, etc., appealed.

The court committed a manifest error in dismissing for want of jurisdiction the demand of Throop, the administrator "with the will annexed," whose functions are the same as a dative executor. He represents the succession at the domicile of the deceased, to which the succession here is ancillary. He has a right, after the debts of the succession here are settled, to demand of the public administrator, who is dative executor, the residue of the funds of the estate, in order that the will may be carried into effect.

In Gravillon vs. Richards, executor, 13 La. 393, it was held: "The power of our courts to order the remission of funds belonging to a foreign succession opened here to the representatives and creditors authorized to receive them by the courts of the domicile of the deceased, is undoubted; every motive of public policy requires such transmission for distribution."

The orders recognizing as heirs at law the illegitimate colored children of Milton Taylor residing in Ohio, and directing that they be put in possession, are revisable in an action of nullity for fraud by the court which rendered them.

The will of Milton Taylor remains unrevoked, and the public administrator, as dative executor, remains in possession of the succession. In obtaining these orders these pretended heirs entirely ignored the will of Milton Taylor, treating the succession as intestate.

We are satisfied from the evidence that they committed a fraud in withholding from the court, when attempting to prove their heirship, the fact that they were the illegitimate children of Milton Taylor by a colored woman who was his slave at the time of their birth, and who died his slave, and therefore, by the laws of Kentucky, the domicile of their origin, they were incapable of inheriting from their father.

The orders, therefore, obtained by Mary Jane Rodgers, Phœbe Ann Duncanson, and John James Taylor must be annulled. These persons are, therefore, without interest to contest with plaintiff, Thomas J. Throop, administrator, etc., on the question raised in their answer, whether the clause of the will conferring a special legacy on Mason County Court contains a prohibited substitution in the meaning of article 1520 of the Revised Code.

If, however, the question were raised and answered in the affirmative, it would not defeat the demand of the plaintiff, because the various other clauses of the will remain in force, not having been attacked, and as administrator "with the will annexed" at the domicile of the deceased, the plaintiff, charged with the execution of the will, is entitled to all the

funds of the succession here remaining after payment of the debts.   13;
La. 296; 6 An. 151.

Looking at the accounts filed by the public administrator, and pending
on the oppositions herein, we find that the proceeds of the sales of the
succession property exceed in the aggregate twenty-one thousand dol-
lars, and that the only debt of the deceased in this State was a mortgage
claim bearing on the property amounting in principal and interest to
$5773.   Yet this public administrator, in utter disregard of his duty, and,
as we find, fraudulently, swells his accounts with false charges, exorbitant
court charges, and numerous claims not owing by the succession, and by
these unjust and exorbitant claims, added to the mortgaged debt of
$5773 actually owing by the deceased, he increases the debit side of his
accounts and reduces the funds in his hands to a balance only of
$4058 25, which he acknowledges he owes the succession.

For the fraud which is manifest in the provisional account, the homolo-
gation thereof in the judgment of the fifteenth of September, 1871, must
be annulled, as prayed for.

After examining the evidence bearing on the items of the two accounts,
we feel constrained to strike therefrom all the items debited, except the
following, those rejected either not being proved or evidently not owing
by the succession.   Some are correct in part, and will be reduced:

Item No.  1 Andrew Hero, notary............................  $4 00
Item No.  2 Clerk's costs.................................   50 00
Item No.  3 Hays & New, attorneys........................  500 00
Item No.  4 W. B. Morris, insurance......................   40 65
Item No.  7 Lewis et al., appraisers, reduced to.........    8 00
Item No.  8 Deslonde's account, reduced to...............  190 50
Item No. 13 Notice to creditors..........................    3 00
Item No. 14 Attorney for absent heirs, reduced to........  100 00
Item No. 17 Mortgage debt................................5,773 00
Item No. 22 Administrator's commissions.................1,000 00
Item No. 23 Tracey, clerk's fees.........................  101 40
Item No. 24 Sheriff's fees...............................    8 00
Item No. 27 J. P. Epply's account........................  209 55
Item No. 30 Balance of administrator's commissions.......   57 64
Item No. 32 E. Morel, attorney's fee.....................  250 00
Item No. 34 Christy, notary..............................   10 00
Item No. 35 Deslonde's account, reduced to...............   60 00
Item No. 36 Reserved for costs...........................   75 00
Item No. 43 A. J. Ball...................................  300 00
Item No. 44 James O'Hara.................................  250 00
Item No. 45 John G. Carlisle.............................  250 00
Item No. 46 Thornton F. Marshall.........................  150 00

As the public administrator failed to deposit in bank the funds of the estate as required by section seven of the Revised Statutes, he must be held liable, as prayed for, to pay twenty per cent per annum interest on $13,484, the amount of funds remaining in his hands after filing the provisional account, from August 21, 1871.

It is therefore ordered that the judgment appealed from be annulled, and it is decreed that the orders herein recognizing as heirs Mary Jane Rodgers, Phœbe Ann Duncanson, and John James Taylor, and ordering them to be put in possession of the succession of Milton Taylor be annulled; that the judgment homologating the provisional account on the fifteenth of September, 1871, be annulled; that all the items on the debit side of the two accounts filed herein be rejected, except items numbers one, two, three, four, seven, eight, thirteen, fourteen, seventeen, twenty-two, twenty-three, twenty-four, twenty-seven, thirty, thirty-two, thirty-four, thirty-five, thirty-six, forty-three, forty-four, forty-five, forty-six; that these items for the respective amounts thereof as stated in this opinion, form and constitute the debit sides of said accounts, the credit sides remaining undisturbed, and as thus constituted, that said accounts be homologated, and the public administrator is hereby ordered to pay each item thereof to the creditors therein named; it is further ordered that Thomas J. Throop, administrator "with the will annexed," etc., plaintiff herein, recover of the defendant, P. B. Fouke, public administrator, dative executor of the succession of Milton Taylor, all the funds belonging to said succession remaining after paying the items of said accounts herein homologated; also, that he recover judgment against him for twenty per cent per annum interest on $13,484 from the twenty-first day of August, 1871.

It is further ordered that the succession of Milton Taylor pay costs of the court below and appellees pay costs of appeal.

---

## On Rehearing.

Morgan, J. A further examination of this case satisfies us—

First—That the judgment putting the heirs in possession was not the result of fraud, but that is was done openly and contradictorily with the proper parties;

Second—That the heirs having been put in possession, the Second District Court was without jurisdiction over the matters in controversy in this proceeding; and

Third—That under the foregoing conclusions the plaintiffs have no interest to contest the account filed by the administrator.

It is therefore ordered, adjudged, and decreed that the judgment heretofore rendered in this case be avoided, annulled, and reversed; and

Succession of Taytor.

it is now ordered, adjudged, and decreed that the judgment of the district court be affirmed with costs.

WYLY, J., *dissenting.* In this controversy between the illegitimate colored children of Milton Taylor and Thomas J. Throop, administrator "with the will annexed," of Mason county, Kentucky, the succession of the domicile of the deceased, in regard to the funds of the succession of Milton Taylor in the hands of the public administrator, P. B. Fouke, who is also a party to this litigation, and who is being proceeded against to account for said funds, several important questions arise:

First—Have these illegitimate colored children any right to interfere in this succession and contest the validity of the will of their father, Milton Taylor, and resist the demand of the administrator "with the will annexed," of the succession of the domicile of the deceased, against the public administrator, P. B. Fouke, administering the ancillary succession here, to recover the residue of the funds of said succession after paying the debts of the deceased?

These children were the offspring of Milton Taylor by his colored concubine, who lived and died a slave in Mason county, Kentucky.

By the laws of Kentucky, the domicile of their origin, and by the laws of this State, where they do not reside, but where they set up the right of heirs, these children are incapable of inheriting the property of Milton Taylor; and consequently they have no right to attack the will of Milton Taylor or any clause thereof, and they are absolutely without standing in court to raise any controversy in regard to said succession.

That there may be no mistake in regard to the incapacity of these pretended heirs to inherit by the laws of Kentucky, the domicile of their origin, I propose to copy some of the evidence in the record.

The witness, R. H. Stanton, testifies: "I practiced law in the circuit court and Court of Appeals of Kentucky from 1839 until 1868, when I became circuit judge of the Fourteenth Judicial District of Kentucky, which position I now occupy. * * * An illegitimate child has no such heritable blood as to enable it to inherit from its father under the laws of Kentucky as they now exist or ever did exist. A child of color, that is, of black blood or a negro, can not now and never could, under the laws of Kentucky, inherit from its white father. An illegitimate child, though of pure white blood, could not inherit from its father under any circumstances, unless authorized by an act of the Legislature, which is sometimes granted. A slave child born of a slave mother could not inherit from its free white father. A child born in slavery of a slave mother can not, and never could, by the laws of Kentucky, inherit from its white father." This testimony in regard to the rights of illegitimate colored children by the laws of Kentucky is corroborated by several

witnesses, especially by H. Taylor, an attorney-at-law, of Mason county, Kentucky.

In their pleadings these pretended heirs admit that they were born of a colored woman, who was the slave of their father, Milton Taylor. Furthermore, the testimony of Washington Evans, who was the son of this colored woman by a colored man before she became the concubine of Milton Taylor, is in the record. He testifies as follows: "I would state that at the time Milton Taylor bought my mother she had two children, myself and brother; at the time he bought my mother he bought my father, whom he sold down the river shortly after. My mother then took up with another black man, by whom she had two children, both of whom died in infancy. Mr. Taylor drove this black man away. and then he had by my mother eight children, all of whom are dead, excepting John James, Mary Jane, and Phœbe. I will state she (the mother of these children) was the slave of Milton Taylor from the time he bought her up to the time of her death. * * * I would state that I have stated all the facts, being myself a slave of Milton Taylor all the time until the emancipation proclamation, when I was set free. I know that their mother was a slave, and they were born slaves, and were incapable of inheriting from these causes."

The witness Stanton testified on cross-examination that "it would have been impossible for a legal marriage to have taken place between Milton Taylor and his slave woman, or any other negro woman, either in Ohio or Kentucky, as such marriages are forbidden in both States as repugnant to natural as well as municipal law."

Here these illegitimate children, who were the slaves of Milton Taylor, and whose mother, a colored woman, was prohibited by the laws of Kentucky and of Ohio from marrying Milton Taylor or any other white man, come to Louisiana and set up rights as heirs of Milton Taylor which they do not possess in Kentucky, their domicile of origin, or at their own domicile in Ohio, and rights which would not be accorded to them were they citizens of this State.

We are referred, however, to the cases of Cabellero and Cornelia Hart, 24 An. 573, and 26 An. 90. In those cases there was a marriage, and a majority of the court held that the marriage and acknowledgment were sufficient to legitimate the children.

Here, however, there was no attempt to legitimate by marriage and acknowledgment. The parties were prohibited from marrying, the colored concubine of Taylor having died during the existence of slavery.

It is urged that these pretended heirs are the natural children of Milton Taylor, and therefore they inherit his property. They have never been acknowledged by him in the manner required by law.

"The acknowledgment of an illegitimate child shall be made by a dec-

laration before a notary public, in the presence of two witnesses, by the father and mother, or either of them, whenever it shall not have been made in the registering of the birth and baptism of such child." Revised Code, 203.

"Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception." Revised Code, 204.

Considering the textual provisions of the Code and the numerous adjudications of this court, the conclusion is inevitable that John James Taylor, Mary Jane Rodgers, and Phœbe Ann Duncanson, the illegitimate children of Milton Taylor by his colored concubine, are incapable of inheriting the property of their father, and they are without an interest in this controversy.

Second—Assuming, however, that they were duly acknowledged natural children, and there was no incapacity of marriage of their parents at the time of their conception, these pretended heirs can not defeat the demand of the dative executor of the domicile of the deceased to recover from the public administrator representing this ancillary succession the residue of the funds remaining in his hands after paying the debts of the deceased; because, if the clause of the will in regard to the legacy to Mason County Court be void as alleged, still the other dispositions of the will, whose validity has not been questioned, should be executed; and the dative executor of the domicile of the deceased is entitled to the funds of this ancillary succession in order to execute the valid dispositions of the will.

Third—These illegitimate children contend that they have been put in possession of the succession by order of the probate court, and therefore the court below was without jurisdiction.

Is this so? The record shows that the funds in controversy have never passed from the hands of P. B. Fouke, public administrator, who was appointed dative executor of the will of Milton Taylor. In his capacity of dative executor Fouke holds the funds of this ancillary succession, and the controversy is who shall recover them, Throop, the administrator "with the will annexed," whose position is dative executor at the domicile of the deceased, or the illegitimate children of Milton Taylor?

Shall the dative executor here give up the funds in his hands after paying the debts to the dative executor of the principal succession, in order that the valid dispositions of the will shall be executed, or shall he hand them over to the illegitimate children of Milton Taylor? That is the question, and the important question, in this case. Until the dative executor turns over the funds to these pretended heirs they can not be said to have been put in possession of said funds; and while these

funds remain in possession of the dative executor the court which appointed him has jurisdiction. Indeed, these pretended heirs admit the jurisdiction of the court, because in this litigation they are also suing the public administrator, who is dative executor for these funds belonging to the succession of Milton Taylor. Both parties are suing Fouke, the dative executor, for the funds. If the court has no jurisdiction of the demand of one, it has not of the other. It matters not what improvident orders may have been issued on the *ex parte* application of these illegitimate children, those orders, until executed, can be reviewed by an action of nullity, as is now attempted, as well as they could be by an appeal. In claiming to be put in possession, these illegitimate children expressly based their claim on the ground that they are natural children duly acknowledged, and the order of the judge directs them to be put in possession on giving bond as required by law, which they have not done.

Article 927 of the Revised Code declares that "if the succession be of the natural father, the natural children by him acknowledged *can not be put in possession* of the succession which they claim until a faithful inventory has been made of the same by a notary appointed for that purpose by the judge, in the presence of a *person* appointed to defend the interest of the absent heirs of the deceased, *and on giving bond and sufficient security* as prescribed in the following article:"

Article 928—"The security to be furnished by natural children put in possession of the effects of their father *shall be two-thirds of the amount of the inventory made thereof.* This security shall be given to insure the restitution of such portion of these effects which they may be adjudged to restore in case the legitimate heirs of the father should present themselves within three years from the putting into possession, after which time this security shall be discharged."

Here the testamentary heirs of Milton Taylor, represented by Throop, the dative executor of the succession of the domicile of the deceased, sue to recover from the ancillary succession the funds remaining after the payment of the debts, and they sue to annul the improvident orders directing the illegitimate children to be put in possession. Can it be said that these improvident orders have been executed and the court has lost jurisdiction, when these illegitimate children have not given bond for two-thirds of the inventoried value of the succession as required by these orders and as imperatively demanded by the articles of the Code to which I have referred?

By the articles quoted natural children are prohibited from being put in possession of the effects of their father until they have given bond for two-thirds of the inventoried value thereof; and "this security shall be given to insure the restitution of such portion of these effects which

they may be adjudged to restore in case the legitimate heirs of the father should present themselves," etc.

They "*can not be put in possession* of the succession which they claim until a faithful inventory has been made of the same by a notary appointed for that purpose by the judge, in the presence of a person appointed to defend the absent heirs of the deceased." * * * The provisions of the law quoted are mandatory. They have not been complied with; and these illegitimate children have not been put in possession, nor has the probate court lost jurisdiction of the succession.

I, therefore, dissent in this case.